UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

**NORTHWEST AIRLINES, INC.,**

Plaintiff,

v.

**EDWARD THOMAS KENNEDY,**

Defendant.

Civil No. 03-871 (MJD/JGL)

**REPORT AND RECOMMENDATION**

---

APPEARANCES

Jeffrey Eyres, Esq., for Plaintiff Northwest Airlines, Inc.

Edward Thomas Kennedy, pro se

---

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

　　The above-entitled matter came on for hearing before United States Chief Magistrate Judge Jonathan Lebedoff on September 16, 2003 on Plaintiff's Motion for Summary Judgment (Doc. No. 10). The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and D. Minn. LR 72.1.

**I.　INTRODUCTION**

　　On August 20, 2002, Defendant Kennedy sent Northwest Airlines, Inc., ("Northwest") a purportedly "self-executing" contract entitled, "Notice by Written Communication / Security Agreement." In the security agreement, Kennedy claimed copyright and trademark rights in the name, "EDWARD THOMAS KENNEDY." Kennedy asserts that the contract both grants him a

SEP 2 6 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

security interest in all of Northwest's property in the amount of $500,000 for each allegedly unauthorized use of his name and authorizes him to foreclose on Northwest's property if it fails to pay his invoices within twenty days.

On September 5, 2002, Northwest received a document from Kennedy entitled "Invoice" and containing an accounting of unauthorized-use fees incurred by Northwest. (Miller Aff. at ¶¶ 4, 5.) That invoice states that Northwest owes Kennedy $3,000,000 based on six alleged unauthorized uses of Kennedy's name on August 7, 2002. The invoice does not specify, and Northwest does not know, how or where the company allegedly used Kennedy's name. On September 10, 2002, Northwest received a second invoice from Kennedy, this time by certified mail, which contained the same accounting of unauthorized-use fees as the 9/5/02 invoice. (See Miller Aff. at ¶ 6.)

On September 11, 2002, Kennedy filed a UCC Financing Statement ("UCC-1") with the Minnesota Secretary of State's Office. (See Eyres Aff. at ¶ 2.) The UCC-1 purports to create a perfected security interest in all of Northwest's assets. (Id.)

Northwest received by certified mail from Kennedy a document entitled, "Notification of Proposal of Full Strict Foreclosure," ("Foreclosure Notice") on November 26, 2002. (See Miller Aff. at ¶ 7.) The Foreclosure Notice purports to provide Northwest with notice of default under the Agreement, and states that Kennedy is entitled to take possession of Northwest's assets to

satisfy the unpaid unauthorized-use fees. (Id.)

On December 20, 2002, Northwest sent Kennedy a cease and desist letter by certified mail, return receipt requested, informing him that Northwest had not consented to the security agreement and requesting his assistance in removing the allegedly improperly filed security interest. (See Eyres Aff. at ¶ 3.) The letter was addressed to Kennedy at the mail address identified in the security agreement, both invoices, and the UCC-1. Kennedy has failed to sign for the letter and has not terminated the UCC-1. (Eyres Aff. at ¶ 4.)

Kennedy has sent additional, virtually identical "self-executing" contracts and invoices to officers and directors of Northwest and the company's outside counsel in this litigation. Among the recipients to date are Northwest officers and board members Richard C. Blum, Phillip Haan, Bernard Han, Douglas Steenland and Gary Wilson, and outside counsel Jeffrey A. Eyres, Timothy P. Griffin, and Daniel Oberdorfer. (Eyres Aff. ¶ 6; Miller Aff. ¶ 8.) On July 7, 2003, Northwest's attorneys received several additional invoices purporting to set forth an accounting of the usage fees due to Kennedy from Northwest and its attorneys. The first invoice is directed to Northwest and claims $17,000,000 in usage fees. The second invoice is directed to attorney Jeffrey A. Eyres and claims $4,000,000 in usage fees. The third invoice is directed to attorney Timothy P. Griffin and claims $4,000,000 in usage fees.

(Eyres Aff. Ex. D.)

Northwest's attorneys also received correspondence from Kennedy on July 7, 2003, stating his intent to take two week interviews "under oath" of all Northwest's "management and non-management officers." (Eyres Aff. Ex. F.) In his July 7 correspondence, Kennedy also represented that he would bring a claim against Northwest's attorneys based upon their representation of Northwest in this action. (Id.)

The Minnesota Attorney General's office, on behalf of the Minnesota Secretary of State, has agreed to implement any order from this Court directing the Secretary to terminate the UCC-1. (Eyres Aff. Ex. G.)

Northwest moves for summary judgment, requesting that the Court declare Kennedy's "self-executing" contracts to be unenforceable and declare that Kennedy enjoys no copyright or trademark rights in his name. Northwest also moves for an order terminating Kennedy's claimed security interests, expunging the financing statement from the Secretary of State's active records, and awarding damages for Kennedy's allegedly unlawful filing of, and refusal to terminate, the UCC-1 financing statement. Lastly, Northwest requests that the Court enjoin Kennedy from attempting to collect money from Northwest, its officers, directors, and agents by sending invoices based on the alleged use of Kennedy's name.

The Court will address the dispositive motion in this Report and

- 4 -

Recommendation. Non-dispositive aspects of Northwest's motion are addressed in a separate Order.

## II.     STANDARD OF REVIEW

For purposes of summary judgment, the Court views the facts in the light most favorable to Kennedy, the non-moving party. See Lower Brule Sioux Tribe v. S. Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997) (citations omitted). However, because Kennedy failed to respond to Northwest's motion or appear at the hearing, the Court is forced to base its review upon materials provided exclusively by Northwest. There are no contradictions in the evidence.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III.    DISCUSSION

### A.     **Kennedy's Self Executing Security Agreement**

A contract is formed, quite simply, when an offer is accepted, when there is a so-called meeting of the minds. See, e.g., Minn. Mining & Mfg. Co. v. Rauh Rubber, Inc., 943 F. Supp. 1117, 1126 (D. Minn. 1996), aff'd, 130 F.3d 1305 (8th Cir. 1997). There is no evidence that Northwest agreed, or gave any

indication that it agreed, to the terms of Kennedy's purportedly self executing security agreement. The security agreement is unenforceable as a matter of law because Northwest did not consent to the terms of the agreement. See id. Northwest should be entitled to summary judgment on Count I of its Complaint.

### B.   Kennedy's Copyright in his Name

Kennedy claims his name is protected by copyright such that he may charge unauthorized-use fees for writing his name. However, copyright protection extends only to "original works of authorship." 17 U.S.C. § 102. "Words and short phrases such as names, titles, and slogans" are "not subject to copyright." 37 C.F.R. § 202.1(a) (2003). Kennedy cannot have a copyright in his name, and Northwest should be granted summary judgment on Count II of its Complaint.

### C.   Kennedy's Trademark in his Name

A trademark arises from the adoption and actual use of a word, phrase, logo, or other device to identify goods or services with a particular party. First Bank v. First Bank Sys., Inc., 84 F.3d 1040, 1044 (8th Cir. 1996) (pertaining to common law trademark); Lanham Act § 45, 15 U.S.C. § 1127 (2003) (pertaining to statutory trademark). There is no evidence that Kennedy's name is associated with any particular product or service. See, e.g., Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 59 F.3d

902, 906-07 (9th Cir. 1995). Therefore, Kennedy has no trademark.

Further, the name "Edward Thomas Kennedy" is a personal name that lacks distinctiveness and has not acquired any secondary meaning that would afford it trademark protection. See J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 13.2 (4th ed.) (citing cases and stating "[s]urnames are one of the classes of marks that do not have the status of a protectable mark upon mere adoption and use"). Accordingly, Northwest should be granted a declaration that Kennedy has no trademark interest in his name, and Northwest's motion for summary judgment on Count III of its Complaint should be granted.

### D. UCC-1 Filed Against Northwest's Assets

Northwest requests an order terminating Kennedy's claimed security interest and summary judgment declaring the interest unenforceable. For a security interest to be enforceable, (1) there must be an authenticated security agreement containing a description of the collateral, (2) value must be given, and (3) the debtor must have rights in the collateral. Minn. Stat. § 336.9-203(b) (2001). In this case, Northwest never signed the agreement and there is no evidence it gave Kennedy any value in exchange for the agreement. Thus, there is no enforceable security interest.

Article 9 of the Uniform Commercial Code, as adopted by Minnesota, provides that a person may file a financing statement "only if" the

purported debtor "authorizes the filing in an authenticated record," becomes "bound as debtor by a security agreement," or acquires collateral subject to a preexisting and continuing security agreement.   Minn. Stat. § 336.9-509 (2002).  As the record stands, none of the three conditions exists here.  Northwest did not authorize the filing, Kennedy has no enforceable security agreement, and Northwest did not acquire any collateral to which Kennedy had a preexisting security agreement.

Therefore, as a matter of law, Kennedy was not authorized to file the security interest against Northwest's assets.  Northwest should be granted summary judgment in this regard, and Kennedy's claimed security interest should be terminated.

### E. Kennedy's Failure to Terminate Security Interest

Northwest asserts that Kennedy's failure to terminate his purported security interest violated Article 9 of the Uniform Commercial Code, as adopted by Minnesota.  See Minn. Stat. § 336.9-513(c)(4) (2002).  That statute requires the purportedly secured party to provide or file a "termination statement" within twenty days after receiving notice that "the debtor did not authorize the filing of the initial financing statement."  Id.  Northwest argues that Kennedy was in constructive receipt of Northwest's letter of December 20, 2002, which gave Kennedy such notice as required by law.  However, Kennedy has not yet signed for the letter.  Nevertheless, the letter was sent by certified

mail, return receipt requested, to the address provided by Kennedy in the security agreement, both invoices, and the UCC-1.  Taking the facts in the light most favorable to Kennedy, this Court concludes that Kennedy did constructively receive the letter, and thus, is deemed to know its contents.  Therefore, Northwest should be granted summary judgment on Count V of its Complaint.

## IV.   INJUNCTION REQUESTED BY NORTHWEST

Norwest requests that the Court enter an injunction prohibiting Kennedy from filing any additional security interests or otherwise attempting to collect the debt he alleges from the unenforceable security agreement.  Such an injunction is authorized by Minn. Stat. § 336.9-625(a) (2002).

This Court believes that an injunction is necessary and appropriate given Kennedy's conduct in sending a purportedly "self-executing" security agreement to Northwest, filing an unauthorized security interest, sending invoices for tens of millions of dollars to Northwest, its officers, directors, and attorneys, threatening to foreclose on Northwest assets, and threatening collateral litigation against Northwest's attorneys.  Northwest should be granted a permanent injunction prohibiting Kennedy from attempting to collect any debt based upon the unenforceable security agreement.

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Doc. No. 10) should be **GRANTED**, and Northwest's request for an injunction should be **GRANTED**.

Dated: September 26, 2003

_____
JONATHAN LEBEDOFF
Chief United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by OCT. 15, 2003, a writing which specifically identifies those portions of this Report to which objections are being made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.